555 So.2d 184 (1988)
Durwood BRASHER
v.
STATE.
4 Div. 905.
Court of Criminal Appeals of Alabama.
January 26, 1988.
On Return to Remand October 11, 1988.
Rehearing Denied December 30, 1988.
*185 Jackson W. Stokes and Debbie Lindsey Jared of Lindsey & Jared, Elba, for appellant.
*186 Don Siegelman, Atty. Gen., and Mary Ellen Forehand, Asst. Atty. Gen., for appellee.
PATTERSON, Judge.
Appellant, Durwood Brasher, was convicted on May 6, 1987, for the crime of sexual abuse in the first degree, § 13A-6-66, Code of Alabama 1975, and was sentenced on May 19, 1987, as a habitual offender, to 20 years' imprisonment. A motion for a new trial was filed on June 18, 1987, and set for hearing on September 3, 1987. Apparently, the trial judge did not rule upon this motion. We deem the motion for a new trial to have been denied by operation of law. A.R.Crim.P.Temp. 13(d).
Appellant gave timely notice of appeal, and the record of the trial was filed with the clerk of this court on August 18, 1987. The appeal was taken under submission on October 13, 1987. Appellant's appointed counsel has not filed a brief, and the state has requested that we take the necessary steps to see that appellant is adequately represented on appeal and a brief is filed.
Our file shows that the clerk of this court notified appellant's counsel, by letter dated September 25, 1987, of the necessity of filing a brief. Mylar v. State, 671 F.2d 1299 (11th Cir.1982), cert. denied, 463 U.S. 1229, 103 S.Ct. 3570, 77 L.Ed.2d 1411 (1983). On October 1, 1987, appellant's counsel moved the trial court to "require the court reporter to amend the transcript by adding all of the documentation shown in the case action summary" and, on that date, the trial court ordered the court reporter to amend the transcript accordingly. We note that appellant did not identify any specific documents or items which he believed were missing from the record. On November 25, 1987, appellant's counsel moved this court to extend the time for filing a brief on the ground that the "official court reporter's transcript is not complete," and our clerk, by letter dated November 25, 1987, advised appellant's counsel as follows:
"Your motion for extension of time was received today. The Court has instructed this office to inform you that the time for filing briefs in the above appeal shall begin to run from the date of filing of supplemental record in this Court. You will be notified when the supplemental record is filed."
No amendment or supplemental record has been filed as of the date of this opinion.
We have reviewed the entire record in this case and, in our opinion, it is complete. We have compared the documentation noted in the case action summary with the documents in the record and find that all documents listed in the case action summary are in the record. Thus, it appears that appellant's motion to amend the record was improvidently granted. We feel that further delay in the prosecution of this appeal is unjustified and not in the interest of the parties.
Appellant is constitutionally entitled to effective assistance of counsel, which includes the filing of an appellate brief on first appeal as a matter of right. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974).
Accordingly, we remand this case to the trial court with instructions to hold a hearing to determine whether new appellate counsel should be appointed. If the trial court determines that the presently appointed counsel should continue to represent appellant, said counsel shall file an appropriate brief with this court within 21 days from the date of the lower court's determination. If the trial court determines that new counsel should be appointed, it should appoint new appellate counsel, and the time for filing the appellant's brief shall commence to run from the date of the appointment and briefs shall be filed in accordance with A.R.A.P. 31. If the trial court appoints new counsel, it shall order present counsel to deliver appellant's copy of the transcript and record to the newly appointed counsel. Due return should be made to this court of the action taken.
REMANDED WITH INSTRUCTIONS.
All Judges concur.

*187 ON RETURN TO REMAND
PATTERSON, Judge.
Due to the failure of appellant's counsel to file a brief on appeal, we remanded this case to the trial court with instruction to determine whether new appellate counsel should be appointed to represent appellant. Subsequently, appellate counsel filed briefs on behalf of appellant. We now turn to the issues raised.
Appellant, Durwood Brasher, was indicted on July 29, 1986, in a two-count indictment for the offenses of sexual abuse in the first degree and sodomy in the first degree, in violation of §§ 13A-6-66 and -63, Code of Alabama 1975, respectively. After a jury trial, he was convicted of sexual abuse in the first degree and was sentenced, as a habitual offender, to 20 years' imprisonment. The jury was unable to reach a verdict on the sodomy charge, and the trial court ordered a mistrial on that charge. Brasher appeals, raising three issues.

I.

A.
Appellant first contends that our statute authorizing the use of videotaped depositions in cases of sexual offenses against children, § 15-25-2, is unconstitutionally vague because it allegedly does not provide criteria for determining the "good cause" required to order a videotaped deposition. There is some question as to whether appellant preserved this issue for review, since he only made general objections of denial of due process at trial and did not specifically mention vagueness. Nevertheless, since there is doubt as to whether the issue has been preserved and since this is a matter of first impression in this state, we choose to address it.
Courts may declare legislative enactments inoperative and void for indefinitiveness or uncertainty in meaning; however, the courts should exercise the power to do so "only when a statute is so incomplete, so irreconcilably conflicting, or so vague and indefinitive, that it cannot be executed, and the court is unable, by the application of known and accepted rules of construction, to determine with any degree of certainty, what the legislature intended." Jansen v. State ex rel. Downing, 273 Ala. 166, 170, 137 So.2d 47, 50 (1962). "If the statute `either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application,' it is void for vagueness." McCorkle v. State, 446 So.2d 684, 685 (Ala.Cr.App.1983) (quoting Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).
Where construction of a statute is necessary, the subject matter of the statute will control, to some extent, in determining whether a strict or liberal interpretation shall be adopted. 82 C.J.S. Statutes at § 387 (1953). As a general rule, penal statutes are strictly construed. Spurlock v. State, 37 Ala.App. 390, 69 So.2d 293 (1953); 82 C.J.S. Statutes at § 389. Procedural statutes, on the other hand, should be liberally construed with a view to the effective administration of justice and to effectuate their purpose. Ballentine v. Bradley, 236 Ala. 326, 182 So. 399 (1938); 82 C.J.S. Statutes at § 395. Here, since we are dealing with a procedural statute, we should apply the rule of liberal construction, if necessary; however, this does not justify construing the language of the statute to mean something different from its clear and obvious meaning. American Life Ins. Co. v. Powell, 259 Ala. 70, 65 So.2d 516 (1953). See also McGuire v. State, 288 Ark. 388, 706 S.W.2d 360 (1986). Where there is nothing to indicate to the contrary, words in a statute will be given meaning which is generally accepted in popular, everyday usage. Holloway v. State, 262 Ala. 437, 79 So.2d 40 (1955); 82 C.J.S. Statutes at § 329(b). General words in the statute should receive general constructions, take meaning from the setting in which they are employed, and be construed in the light of the purpose of the statute. 82 C.J.S. Statutes at § 332(a).
Our statute provides guidance to trial courts in determining whether good *188 cause exists for ordering a videotaped deposition. Section 15-25-2(a) provides that the trial court shall consider "the age and maturity of the child, the nature of the offense, the nature of testimony that may be expected, and the possible effect that such testimony in person at trial may have on the victim or witness ...." The words "good cause" in the statute form a common legal phrase, familiar to most people. McGuire v. State, supra; Davis v. State, 24 Ark.App. 152, 751 S.W.2d 11 (1988). We conclude that the statute furnishes sufficient guidance to the trial court to determine whether a videotaped deposition is warranted. Considering the language of the statute, the common understanding and usage of the term "good cause," the obvious purpose and intent of the legislation, and the factors required to be considered by the court in making its decision to order a videotaped deposition, we find that the statute is not unconstitutionally vague.

B.
Appellant also contends that the statute is unconstitutional because it violates his constitutional right of confrontation guaranteed him under the Sixth and Fourteenth Amendments to the United States Constitution. We have recently addressed this issue in Strickland v. State, 550 So.2d 1042 (Ala.Cr.App.1988), wherein we held that the statute is not repugnant to the confrontation clauses of the United States and Alabama constitutions. We held that the right of a defendant to confront his accuser was not denied by our statute authorizing the use of a child's videotaped deposition as long as there was a face-to-face confrontation between the victim or witness, the defendant, and his counsel at the time of the taking of the deposition, as well as an opportunity for cross-examination of the deposed by the defendant. We adhere to our decision in Strickland.

II.
Appellant contends that the trial court erred in allowing the child to testify by videotape because good cause was not shown as required by § 15-25-2(a). He argues that the failure to follow the statute in this regard requires reversal, not only because of the mandatory requirements of the statute, but because the failure denied him due process of law.
Section 15-25-2(a), provides, in pertinent part, as follows:
"In any criminal prosecution referred to in section 15-25-1,[1] the court may, upon motion of the district attorney, for good cause shown and after notice to the defendant, order the taking of a videotaped deposition of an alleged victim of or witness to said crime who is under the age of 16 at the time of such order. On any motion for a videotaped deposition of the victim or a witness, the court shall consider the age and maturity of the child, the nature of the offense, the nature of testimony that may be expected, and the possible effect that such testimony in person at trial may have on the victim or witness, along with any other relevant matters that may be required by supreme court rule."
As we pointed out in Strickland, 550 So.2d at 1049,
"The statute obviously contemplates a procedure whereby the district attorney desiring to use a videotaped deposition of a child in a sex abuse case must file a motion with the trial court seeking an order for permission to take the deposition, notice of the filing of the motion must be given the defendant, a hearing should be held and the defendant given an opportunity to present evidence in opposition to the motion and otherwise oppose the motion. After hearing the parties and considering the evidence presented, the trial court may order the deposition to be taken if it finds good cause for doing so. The statute does not require a formal finding of fact to support good cause for the taking of the deposition; however, we think the better *189 practice would be for the trial court to make such a finding and enter it into the record of the proceeding. We believe that, in order for the trial court to justify a finding of good cause, the record should reflect some evidence before the court from which it could conclude that live testimony in the courtroom would be traumatic to the child. Obviously, these proceedings should occur prior to the taking of the deposition. We do not believe that age alone justifies a finding of good cause. In other words, there should be no presumptions of trauma."
In the instant case, the district attorney filed a motion on December 11, 1986, seeking a court order authorizing the taking of a videotaped deposition of the victim. As grounds for the motion, the district attorney alleged that the child is five years of age; that the cases involve sexual abuse and sodomy; and that live testimony in court will have a deleterious effect upon the child. On December 16, Circuit Judge Riley Green granted the order without a hearing. The deposition was taken on March 6, 1987, over the objections of appellant; however, appellant and his counsel were present and were accorded a full opportunity to cross-examine the child. Judge Green presided over the taking of the deposition. Prior to the commencement of the deposition, appellant objected to the taking of the deposition on the ground that good cause had not been shown, and Judge Green overruled the objection. When the case subsequently came up for trial on May 4, Circuit Judge Gary L. McAliley, presided. Just prior to commencement of trial, appellant again objected to the deposition, on the grounds that the statute was unconstitutional because it denied him his confrontation and due process rights and that the procedural requirements of the statute, including the failure to show good cause, had not been followed in the taking of the deposition. Judge McAliley decided to hold a hearing on the district attorney's motion to take the deposition, to view the deposition itself, and to rule on any objections appellant had in reference to the child's testimony. In other words, the trial court elected to follow the procedural guidelines of § 15-25-2 and hear the entire matter without regard to what Judge Green had previously done. The record shows the following:
"MR. STOKES [defense counsel]: All right, sir. I was going to point out that there's nothing in this file to thedirected to that particular question, whether or not the Court has considered the age and maturity of the child with reference to ordering this video deposition.
"THE COURT: This court will certainly do that. But, I understand that Judge Green has already ruled on that. Just out of abundance of caution, this Court this judge will do the same thing."
The hearing was held. The videotape was viewed with appellant and his counsel present. When appellant objected to certain portions of the child's testimony, the tape was stopped and rulings were made by the trial court. The court properly ruled that the child was competent to testify and properly authorized leading questions. See also § 15-25-3(c). After the hearing, Judge McAliley ruled, in pertinent part, as follows:
"So, the Court finds that this witness is a competent witness and declares that the witness is a competent witness capable of testifying through the use of this video deposition. And, the Court will allow the testimony of this young witness for the reasons that have been enumerated. And, will allow the video deposition to be utilized by the State in its presentation of the criminalits criminal case against this defendant Durwood Brasher."
The trial court's ruling reflects a finding of good cause, albeit after the deposition had been taken. The court's finding that it would allow the deposition "for the reasons that have been enumerated" obviously refers to the grounds asserted by the district attorney in his motion for authorization to take the deposition. In fact, the court specifically referred to the enumerated reasons early in the hearing. The trial court had the opportunity, during the hearing, to view the deposition and thereby observe the child testifying. The court thus had first-hand knowledge of how she *190 would react to questioning, on both direct and cross-examination. Based on these observations, including the tender age of the child, and the assertions of the district attorney in his motion, which were obviously considered by the court, we believe that the trial court's decision to admit the deposition was based upon "good cause shown." The record reflects that the trial court was fully aware of the tender years of the child and of the suffering the child had allegedly endured as a result of the alleged sexual abuse. The court's ruling admitting the deposition was proper under the circumstances and was supported by the evidence before the court. We think the preferable way to make a good cause determination is to do so after a hearing (wherein evidence is presented as to the effect an in-court appearance would have on the child) and prior to the actual taking of the deposition. Strickland v. State, supra. However, in this case, the delay in making the finding is not fatal. It occurred prior to trial and, thus, prior to the deposition being admitted into evidence. We find that the end result did comply with the statute, that no prejudice resulted to appellant, and that there was no denial of due process.
Appellant calls our attention to that portion of § 15-25-2(a) which provides, "Objections to the introduction into the record of such deposition shall be heard by the judge in whose presence the deposition was taken," and points out that this provision was not followed in this case. It is true that Judge Green presided at the actual taking of the deposition, and that Judge McAliley heard the objections to the introduction of the deposition into the record; however, in view of the circumstances surrounding the taking of the deposition and its admission into evidence in this case, we believe that there was a substantial compliance with the statute. By substantially performing the functions previously performed by Judge Green, Judge McAliley, in effect, brought himself into compliance with the statute and satisfied its purposes. His actions merged with Judge Green's to such an extent that they became one and the same.
In addition, we are of the opinion that this provision of the statute should be construed as directory and not mandatory.
"A mandatory provision in a statute is one the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding; and a statute may be mandatory in some respects, and directory in others."
82 C.J.S. Statute at § 374 (1953) (footnotes omitted).
"There is no universal rule or absolute test by which directory provisions in a statute may in all circumstances be distinguished from those which are mandatory. However, in the determination of this question, as of every other question of statutory construction, the prime object is to ascertain the legislative intent. The legislative intent must be obtained from all the surrounding circumstances, and the determination does not depend on the form of the statute. Consideration must be given to the entire statute, its nature, its object, and the consequences which would result from construing it one way or the other.... [T]he language of a statute, however mandatory in form, may be deemed directory whenever legislative purpose can best be carried out by such construction, and the legislative intent does not require a mandatory construction; ...
"In the application of subsidiary rules for the determination of the legislative intent in this respect there is no small confusion in the decisions, but certain principles have been recognized as established. Whether a statute is mandatory or directory depends on whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form, and what is a matter of essence can often be determined only by judicial construction. Accordingly, when a particular provision of a statute relates to some immaterial matter, as to which compliance with the statute is a matter of convenience rather than substance, or where the directions of a statute are given merely with a view to the proper, *191 orderly, and prompt conduct of business, it is generally regarded as directory, unless followed by words of absolute prohibition; and a statute is regarded as directory where no substantial rights depend on it, no injury can result from ignoring it, and the purpose of the legislature can be accomplished in a manner other than that prescribed, with substantially the same results...."
Id. at § 376 (footnotes omitted). See also McDonald v. State, 32 Ala.App. 606, 28 So.2d 805 (1947).
We do not believe that the legislature intended this provision to be mandatory. Such a construction could lead, in some circumstances, to an absurd result. If the trial judge who presided at the taking of the deposition became unavailable to try the case, it is illogical that the state would automatically, because of that, be unable to use the deposition. Furthermore, the provision in question here is obviously not the "essence of the thing required" in the statute, and a failure to follow it would not defeat the purpose of the statute, nor would it substantially affect the results intended. See Ex parte State ex rel. King, 233 Ala. 318, 171 So. 892 (1937); Alabama Pine Co. v. Merchants' & Farmers' Bank of Aliceville, 215 Ala. 66, 109 So. 358 (1926); McDonald v. State, supra.
Finally, we note that there is some question as to whether this issue concerning the provision of the statute under discussion has been preserved for review. Appellant did not specifically raise this question below, but objected generally to the failure of the trial court to follow the statutory procedure. Nevertheless, we have addressed this question because of the difficulty in determining whether the issue has been preserved, and because it is the first time the question has been raised in our courts.
For the above reasons, we find no merit in these contentions.

III.
Last, appellant contends that reversible error occurred when the trial court denied his motion for a mistrial. The matter arose during cross-examination of appellant when the prosecutor asked appellant a question relating to the victim's sister. The record shows the following:
"Q. Have you ever bought anything for Scottie's [the victim's] little sister?
"A. Yes, sir.
"Q. What have you bought for Scottie's little sister?
"A. I bought her a doll, and I bought her a tricycle. And, I bought her several things.
"Q. You bought her as much as you bought Scottie?
"A. Yeah, near about it. I bought her diapers and I bought her milk and all of that. I love her just like I loved Scottie.
"Q. And, you molested her?
"A. No, sir.
"MR. STOKES [defense counsel]: The Court please, we object to this line of questioning. That's highly irregular and the D.A. knows that.
"THE COURT: Sustained. Ladies and gentlemen of the jury, that question and answer was improper, you took an oath to well and truly try this case and true verdict render. The Court instructs you that the last question and last answer was not legal and competent evidence. It's irrelevent to the issues before this Court. The jury is instructed to disregard that last question, and the last answer in rendering a decision or verdict in this case.
"MR. STOKES: If the Court please, we have further motion that the question in and of itself was calculated solely for the purpose of [arousing] the passion of this jury. And we make a motion for mistrial.
"THE COURT: Motion for mistrial is denied."
Appellant argues that the trial court abused its discretion in denying his motion for a mistrial. He relies on Crook v. State, 469 So.2d 690 (Ala.Cr.App.1985).
"It should be noted initially that `[t]he grant or denial of a mistrial is a matter within the sound discretion of the trial court and will only be disturbed upon a showing of manifest abuse.' Durden v. *192 State, 394 So.2d 967 (Ala.Crim.App.1980), cert. denied, 394 So.2d 977 (Ala.1981); Wright v. State, 421 So.2d 1324 (Ala. Crim.App.1982); Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967); Davis v. State, 457 So.2d 992 (Ala.Crim.App.1984). `The entry of a mistrial is not lightly to be undertaken. It should be only a last resort, as in cases of otherwise ineradicable prejudice. Where error is eradicable a mistrial is too drastic and is properly denied. Chillous v. State, 405 So.2d 58 (Ala.Crim.App.1981); Van Antwerp v. State, 358 So.2d 782 (Ala.Crim.App.), cert. denied, 358 So.2d 791 (Ala.1978); Thomas v. Ware, 44 Ala.App. 157, 204 So.2d 501 (1967).' Woods v. State, 460 So.2d 291, 296 (Ala.Crim.App.1984)."
Thompson v. State, 503 So.2d 871, 877 (Ala.Cr.App.1986), aff'd, 503 So.2d 887 (Ala.), cert. denied, 484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987).
Our review of the record in the instant case convinces us that the trial court did not abuse its discretion in denying the motion for a mistrial. While we do not condone the prosecutor's question, we do not find it falls within the criteria of Crook, 469 So.2d at 694-95. Moreover, the Crook court recognized the following:
"[E]ven a prosecutor's repeated references to evidence ruled inadmissible may not constitute reversible error if the trial court takes sufficient curative action. Thomas v. State, 432 So.2d 15, 17 (Ala. Cr.App.1983); Trent v. State, 380 So.2d 960, 964 (Ala.Cr.App.1979), cert. quashed, Ex parte Trent, 380 So.2d 966 (Ala.1980). `"Generally, timely corrective action by the [trial] court ... is sufficient to cure the error resulting from improper conduct or remarks of counsel, unless such conduct or remarks are so prejudicial that they are obviously not cured, or unless the court's action is insufficient for such purpose."' Orr v. State, 40 Ala.App. 45, 50, 111 So.2d 627 (1958), affirmed, 269 Ala. 176, 111 So.2d 639 (1959).
"... In determining whether an accused was prejudiced by prosecutorial misconduct, this court `must ordinarily give great deference to the [trial] judge's handling of the alleged misconduct.' Wysinger v. State, 448 So.2d 435, 439 (Ala.Cr.App.1983)."
Id. at 695. Here, we do not have repeated attempts to elicit inadmissible evidence or repeated references to inadmissible evidence. Here, we have the sole isolated question cited above. In our opinion, the objectionable question, when viewed in the context in which it arose, did not create such prejudice that it was not eradicated by proper instructions. The prompt action of the trial court in instructing the jury to disregard the question cured any possible prejudice to appellant. See also Ringer v. State, 489 So.2d 646, 649-50 (Ala.Cr.App. 1986).
For the above reasons, we conclude that this case is due to be affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.
NOTES
[1] Section 15-25-1 refers to "any criminal prosecution for a sexual offense wherein the alleged victim is a child under the age of 16 years and... any criminal prosecution involving the sexual exploitation of a child under the age of 16."