HOOPER, Chief Justice
(dissenting):
I respectfully dissent. I concur in Justice Houston and Justice Maddox’s dissents, and I add the following.
None of the plaintiffs resides in Macon County. The alleged injurious acts did not occur in Macon County. None of the defendants resides in Macon County. Ala.Code 1975, § 6-3-5, is mainly for the benefit of the plaintiff, who would normally prefer to bring an action in his or her own home county, unless he or she was forum shopping. There is simply no reason for these plaintiffs to bring these actions in Macon County. Allowing them to pick the forum on the basis of the expected outcome leads one to conclude that they are forum shopping.
As for Macon County’s relationship to these cases, it does not matter which statute this Court uses to analyze the situation presented here. Both § 6-3-5 and § 6-3-7, Ala. Code 1975, support the trial judge’s order transferring these cases out of Macon County. An honest dispute exists as to what county they should be transferred to.
“The rules of statutory construction require that the words used in a statute be given their plain, natural, ordinary, and commonly understood meaning.” Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1224 (Ala.1984), quoted in Ex parte New England Mut. Life Ins. Co., 663 So.2d 952 (Ala.1995). If this Court categorizes the complaints as “arising out of’ the policies of insurance issued by United Insurance Company, then § 6-3-5 applies. If this Court categorizes the complaints as alleging personal injury, as the trial judge did, then § 6-3-7 applies. Under either statute, venue is not proper in Macon County. If any of the complaints allege both personal injury and contract causes of action “arising out of’ the policies of insurance, then venue is still improper in Macon County.
As for actions “on the policy,” § 6-3-5 should control if this Court is going to follow the plain, common, and ordinary meaning of the words of a statute. An insurance policy *216 is a contract. Schoepflin v. Tender Loving Care Carp., 631 So.2d 909 (Ala.1993) (defining an insurance contract in the context of the tort of bad faith refusal to pay); Knight v. Alfa Life Ins. Corp., 594 So.2d 1229 (Ala.1992) (action alleging breach of life insurance contract, involving insured’s failure to follow policy procedures as to medical examination and tests); Continental Assur. Co. v. Kountz, 461 So.2d 802 (Ala.1984) (action alleging bad faith refusal to pay and breach of insurance contract). A contract action in the insurance context will necessarily be an action “on the policy”; therefore, § 6-3-5 would apply to determine proper venue with respect to this contract action against United Insurance.
Amendment 473 states that a foreign corporation “may be sued only in those counties where such suit would be allowed if the said foreign corporation were a domestic corporation.” The first part of § 6-3-5 states that venue is proper where the holder of the policy resides. That portion of the statute would apply to a domestic insurance corporation, and it does not require that the domestic corporation do business in the county where the action is filed. If foreign corporations are to be treated the same as domestic corporations for the purpose of determining proper venue, then a foreign insurance corporation may be sued in the county of the policyholder’s residence without regard to whether it does business in that county or not. Venue in Macon County is, therefore, not proper, because no plaintiff resides in that county.
If this Court relies upon § 6-3-7 as the primary statute for determining venue for these cases, then this Court must decide whether the trial judge abused his discretion in transferring them out of Macon County and to Shelby County. “In cases involving the exercise of discretion by a lower court, a writ of mandamus may issue to compel the exercise of that discretion; however, it may not issue to control the exercise of discretion except in a case of abuse.” Ex parte Ben-Acadia, Ltd., 566 So.2d 486, 488 (Ala.1990). “The burden of proving improper venue is on the party raising the issue, and on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial court.” Ex parte Ralston, 519 So.2d 488, 490 (Ala.1987).
Amendment 473 provides that foreign corporations will be treated the same as domestic corporations. In light of that constitutional amendment, § 6-3-7 states clearly that a foreign corporation may be sued in a personal injury action in the county where the injury occurred or in the county where the plaintiff resides if the corporation does business by agent in the county of the plaintiffs residence. Macon County fits neither of these criteria. Therefore, the trial judge correctly sought another more appropriate venue. Because venue is proper in more than one county, the trial judge applied Rule 82(d)(3), Ala.R.Civ.P., and, in accord with the unanimous agreement of the defendants, transferred the eases to Shelby County.
Given these facts, this Court should rely upon § 6-3-5 as the primary statute for determining proper venue. Leaving the cases in Macon County in contravention of § 6-3-5 would violate Amendment 473 to the Alabama Constitution of 1901. Under the plaintiffs’ interpretation and this Court’s interpretation of § 6-3-5, a foreign insurance corporation would be subject to being sued in any county in which it does business, an obviously broad range of venue, since United probably does business in most counties in Alabama. Yet, under § 6-3-5, a domestic insurance corporation would be subject to being sued only in the county of the policyholder’s residence, if the defendant insurance corporation did business in that county also. Such a disparity in the treatment given foreign insurance corporations as compared with the treatment given domestic insurance corporations is unconstitutional, given the provisions of Amendment 473.
The majority’s interpretation renders § 6-3-5 meaningless. Why would the legislature add a new statute in 1955 and state the counties in which an insurance company shall be sued and not really mean anything by it? Why did the legislature not just say, “A foreign insurance corporation may be sued in any county in which it does business”? Why would the statute even contain language con- *217 ceming the county where the policyholder resides? Why even have the statute? Section 6-3-7 already existed and, according to the majority’s opinion, covers contract actions. This Court should not so easily dismiss a statute because it does not contain the word “only.” The majority holding does not clarify this statute; it erases it. The majority opinion relates some informative history on old § 232 of the Alabama Constitution. It is for the most part irrelevant to the discussion of the venue problem in this case. Reliance upon § 232 of the Alabama Constitution of 1901 does not help the Court’s interpretation, because Amendment 473 has erased the discriminatory effects of § 232. The plain, natural, ordinary, and commonly understood meaning of the words used in § 6-3-5 suggests that actions against insurance corporations shall be filed in the county where the policyholder resides.
The majority attempts to explain away the use of the word “shall” in § 6-3-5. Nevertheless, it is a significant word. The word “shall” is a mandatory term in § 6-3-5. See Pierson v. State, 677 So.2d 246 (Ala.1995) (“While conceding that the use of the word ‘shall’ in the statute suggests a mandatory fine, the Court of Criminal Appeals held that the statute ‘ “may also be construed as being permissive where the intent of the legislature would be defeated by making the language mandatory.” ’ 677 So.2d at 246 (quoting Ex parte Brasher, 555 So.2d 192, 194 (Ala.1989)).”); State ex rel. Hartman v. Thompson, 627 So.2d 966, 970 (Ala.Civ.App.1993) (“Moreover, had the legislature intended for service as a holdover to be a mandatory part of the statutory term of office, it would not have used the permissive term ‘may,’ but would have used the imperative term ‘shall,’ as it did elsewhere in § 5-2A-3” and “In the absence of clear legislative intent to the contrary, the word ‘shall’ is to be afforded a mandatory connotation when it appears in a statute,” citing Prince v. Hunter, 388 So.2d 546 (Ala.1980).). Nothing in § 6-3-5 indicates a contrary legislative intent, and the majority today has made no showing whatever that if the language is considered mandatory it will defeat the legislature's intent. On the contrary, making the word “shall” to be permissive, as the majority does, defeats the legislature’s intent. To construe the word “shall” in § 6-3-5 as meaning “may” makes that section a permissive statute. The majority causes the permissive statute (§ 6-3-7) to have priority over the mandatory statute (§ 6-3-5). In addition, § 6-3-7 was enacted earlier. It would not follow logically that the legislature enacted a mandatory statute and intended for an earlier permissive statute to override it.
Section 6-3-7 is the general statute covering venue for civil actions against foreign corporations, and § 6-3-5 is the more particular statute covering foreign insurance corporations. I do not consider the statutes to conflict. However, the majority opinion could be interpreted as asserting the existence of a conflict between the two statutes as to contract actions against insurance corporations. In case of such a conflict, the specific statute is to be followed rather than the general statute. Additionally, I note that the portion of § 6-3-7 dealing with personal injury actions against corporations was added to that section in 1903. Section 10471, Ala.Code 1923, amended that portion to apply it only to domestic corporations. Yet § 6-3-5 became law in 1955. I think it is clear that § 6-3-5 was intended to supplement and qualify § 6-3-7.
I would also add that I have found only four opinions ■written since 1954 that even cite § 6-3-5. None of these opinions carefully analyzed the statute in regard to the question of improper venue. Those cases raised the issue of forum non conveniens and never directly addressed the meaning of the statute. See Ex parte New England Mut. Life Ins. Co., 663 So.2d 952 (Ala.1995); Ex parte Blount, 665 So.2d 205 (Ala.1995); Ex parte Bloodsaw, 648 So.2d 553 (Ala.1994); and Ex parte City of Fayette, 611 So.2d 1032 (Ala.1992) (overruled on other grounds, Ex parte Alabama Power Co., 640 So.2d 921 (Ala.1994)). That statute apparently has been neglected for years. Nevertheless, the majority opinion’s interpretation appears to be unconstitutional when considered in light of Amendment 473.
The majority seems to avoid the plain meaning of § 6-3-5 by citing Amendment *218 473. Amendment 473 states in relevant part that foreign corporations “may be sued only in those counties where such suit would be allowed if the said foreign corporation were a domestic corporation.” The language of Amendment 473 serves to restrict venue in an action involving a foreign corporation to those counties where venue would be proper if the action was against a domestic corporation. In other words, a foreign corporation cannot be treated unequally because of the fact that it is a foreign corporation. The amendment does not erase the protection provided a foreign insurance corporation by § 6-3-5. Old § 232 of the Alabama Constitution allowed a plaintiff to sue a foreign corporation in any county where it did business. Amendment 473 amended that section to allow such an action only in a county where venue would be proper in an action against a domestic corporation. Amendment 473 is an anti-forum shopping amendment. The majority has turned it on its head. Interpreting Amendment 473 raises the following question: May a domestic insurance corporation be sued on a policy in a county where the plaintiff does not reside? The plain wording of § 6-3-5 indicates that it cannot. If a domestic insurance corporation may not, then neither may a foreign insurance corporation. The majority has erased the curative effect of Amendment 473. It has also nullified § 6-3-5 by ignoring that section. It does not matter which statute this Court follows in determining proper venue in these cases — venue is not proper in Macon County. Therefore, the joinder of the fraud and contract actions has no effect upon Judge Howard Bryan’s order transferring these cases out of Macon County. “It is a general rule that no one has any vested right to any particular remedy or form of procedure, and that the matter of venue belongs to the procedure or remedy, and is no part of the right itself.” Home Protection of North Alabama v. Richards & Sons, 74 Ala. 466, 470 (1883). If one considers this change of venue to have been granted on the basis of the doctrine of forum non conveniens, one must conclude that Judge Bryan did not abuse his discretion in transferring these cases out of Macon County. In fact, the majority does not rule out that option. It merely holds that venue is proper in Macon County. It does not address whether the trial judge can transfer these cases to another county based on the doctrine of forum non conveniens.
Forum shopping is a horrendous abuse of the judicial system. The trial judge did not clearly err in transferring these cases out of Macon County. In fact, he did his duty. I would deny the mandamus petition as it relates to Judge Bryan’s holding that venue is improper in Macon County. The clear wording of Ala.Code 1975, § 6-3-5, states that proper venue for an action “on the policy” is the county in which the policyholder resides. Section 6-3-7 provides that venue is proper in (1) the county where the injury occurred, or (2) the county where the plaintiff resides. Macon County does not qualify under either § 6-3-5 or § 6-3-7.